FILED

2016 Mar-31  AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| GLORIA RODGERS, as Adminstrator of the Estate of John Rodgers, ) ) ) ) | |
| Plaintiff ) ) | CIVIL ACTION NO. 1:14-CV-00605 |
| v. ) ) | |
| AWB INDUSTRIES, INC. d/b/a AIRCRAFT TOOL SUPPLY COMPANY, et. al, ) ) ) ) | |
| Defendants ) | |

## MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, **AWB Industries, Inc., d/b/a Aircraft Tool Supply Company**, [hereinafter "AWB"] one of the Defendant in the above-styled cause, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this memorandum brief in support of its motion for summary judgment.

# TABLE OF CONTENTS

Introduction ...................................................................................................... 1

Argument ........................................................................................................... 1

    I.     Deceased, John Rodgers placed himself within the arc of the propeller while performing the maintenance and was guilty of contributory negligence as a matter of law because no reasonable person viewing the facts could reach a different conclusion .............. 1

    II.   Deceased, John Rogers assumed the risk of injury when he placed himself in the arc of the propeller while performing maintenance on the airplane and AWB is entitled to summary judgment ............................................................................................ 3

    III.  AWB is also entitled to summary judgment on the Alabama Extended Manufacturers Liability Doctrine claim because the deceased, John Rodgers misused the product. ................................... 6

    IV.  AWB is also entitled to summary judgment because there is no evidence that the Differential Pressure Tester was the proximate cause of the injuries .......................................................................... 9

    V.   AWB is also entitled to summary judgment because the plaintiff relies upon speculation and conjecture to support the basis for the liability it alleges .................................................................... 11

    VI.  AWB is entitled to summary judgment on the breach of warranty claims asserted in the Plaintiff's Complaint .................... 15

    VII. The Defendant is entitled to summary judgment on those claims based upon an allegation of wantonness because there is no evidence to support a finding that AWB acted wantonly or that any such alleged conduct caused the injuries alleged and because the danger of standing within the arc of the propeller was open and obvious to John Rodgers a trained aircraft mechanic ............................................................................................ 17

Conclusion ........................................................................................................ 19

## INTRODUCTION

Plaintiff filed a Complaint under Alabama's Wrongful Death Act against AWB and the other Defendants asserting claims under Alabama's Extended Manufacturers Liability Doctrine (Doc. 1, Count I), Breach of Warranty (Doc. 1, Count II), and Negligence/Wantonness (Doc. 1, Count III).  The First Amended Complaint added an additional Defendant, Robert Baines, the alleged designer and manufacturer of the extension tube used by the deceased, John Rodgers, but did not change the Counts as described above.

## ARGUMENT

**I.**  **Deceased, John Rodgers placed himself within the arc of the propeller while performing the maintenance and was guilty of contributory negligence as a matter of law because no reasonable person viewing the facts could reach a different conclusion.**

Contributory negligence may be found to exist as a matter of law when the evidence is such that all reasonable people must reach the same conclusion.  <u>Chilton v. City of Huntsville</u>, 584 So. 2d 822, 824-25 (Ala. 1991); <u>Bridges v. Clements</u>, 580 So. 2d 1346 (Ala. 1991); <u>Knight v. Seale</u>, 530 So. 2d 821 (Ala. 1988).  Contributory negligence as a matter of law is established when the Defendant shows that the plaintiff put himself in dangers way and that the plaintiff had a conscious appreciation of the danger at the time the incident occurred.  <u>Hannah v. Gregg, Bland & Berry, Inc.</u>, 840 So.2d 839, 860-61 (Ala. 2002).  Contributory negligence bars both negligence and AEMLD claims.

The evidence clearly shows that the plaintiff put himself in danger's way.  It is an undisputed fact that John Rodgers was injured by the rotation of the propeller.  It is also undisputed that John Rodgers placed himself within the arc of the propeller and that if he had not been in the arc of the propeller he would not have been injured by the rotation.

The evidence is undisputed that John Rodgers had knowledge and an appreciation of the danger at the time the incident occurred.  John had completed more than 3000 compression tests on aircraft engines.  He had tested this very airplane engine on at least two previous occasions, and on the day of the accident had already tested the two cylinders on the right hand side of the engine.  His own father, also an aircraft mechanic, who had helped his son complete more than 30 compression tests, testified that his son should not have been in the arc of the propeller and that he made a mistake to be within the arc of the propeller.  It is also undisputed that all FAA trained and licensed A&P and IA mechanics are taught and informed not to place any part of the body within the arc of the propeller.  See, "Aviation Maintenance Technician Handbook – General, FAA-H-8083-30, (2008)("[I]t is important to be aware of propellers." at p. 11-5; "Never allow any portion of your body to get in the way of the propeller.  This applies even though the engine is not being cranked." at p.11-14).

Even if we assume or guess that John Rodgers applied compressed air directly to the engine, and this was the cause of the propeller's rotation, the FAA warns mechanics that air pressure applied to an engine's cylinder can cause the propeller to rotate. See, FAA Advisory Circular AC43-13-1B, "Acceptable Methods, Techniques, and Practices – Aircraft Inspection and Repair, Par 8-14, pp.8-7 to 8-8 (9/27/2001)(**CAUTION:  Care must be exercised in opening the air valve since sufficient air pressure will have built up in the cylinder to cause it to rapidly rotate the propeller if the piston is not at top dead center (TDC).** (emphasis in the original)).  Mr. Rodgers could safely perform this test without placing his head in the arc or the propeller, a test that he performed thousands of time over a decade of work as a licensed A&P and IA mechanic.  The Plaintiff's own experts agree that the test can be done without standing in the arc of the propeller.  The undisputed evidence is such that all reasonable persons must reach the same conclusion, that John Rodgers was guilty of contributory negligence as a matter of law.

II.     **Deceased, John Rogers assumed the risk of injury when he placed himself in the arc of the propeller while performing maintenance on the airplane and AWB is entitled to summary judgment.**

The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger.  Ex parte Potmesil, 785 So. 2d 340, 343 (Ala. 2000), *quoting* McIsaac

3

v. Monte Carlo Club, Inc., 587 So. 2d 320, 324 (Ala. 1991) Assumption of the risk is "a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk." Id. at 343.; See also, Cooper v. Bishop Freeman Co., 495 So. 2d 559, 563 (Ala. 1986), overruled on other grounds, Burlington Northern R.R. v. Whitt, 575 So. 2d 1011 (Ala. 1990). Assumption of the risk proceeds from the injured person's actual awareness of the risk. Id.

John Rodgers assumed the risk of injury and the Defendant is entitled to summary judgment. He clearly had knowledge and specialized training regarding the danger arising from standing in the arc of a propeller. He was a licensed and trained aircraft mechanic operating his own aircraft repair business. He was around propeller driven airplanes every day of his professional career. On the day of the incident there were other propeller driven airplanes in the hanger that he was also working with. He was warned in professional literature to keep his body out of the way of the propeller. It is beyond dispute that all aircraft mechanics know of the danger from propellers.

Specifically as to engine cylinder compression tests he had more than 10 years of experience. He had performed more than 3000 tests. As an IA licensed mechanic he was authorized by the FAA to sign off on each airplane's logbook that the annual

inspection had been completed and each annual inspection required a compression test.  It is undisputed that aircraft mechanics and pilots are aware of the danger of moving propellers.  As to compression tests, literature warns  FAA trained and licensed mechanics not just to keep out of the way of a propeller but was also told the obvious that air pressure could  cause the propeller to "rapidly rotate".  Mr. Lykins who teaches this procedure to aircraft mechanic students confirmed the test can be safely performed without having your head or body within the arc of the propeller.  The plaintiff's expert witnesses agree that this is true.  The first prong of the test is clearly met.

It is also undisputed that no one placed John Rodgers in danger.  There would be no injury and no lawsuit, except that John Rodgers placed himself in harm's way. Compare, Mr. Findley's position on the day of the incident.  He was standing next to the engine, behind and out of the way of the propeller when it suddenly turned. Thankfully he was not in the arc of the propeller, but if he had had walked to the front, perhaps to see what John Rodgers was trying to accomplish and the propeller had rapidly rotated, he likewise would have assumed the risk by standing in the propeller's arc.   No one was supervising or directing John Rodger's work.  He was a self-employed independent contractor.   No one told him to work or to be within the arc of the propeller.  Mr. Maddox, one of the Plaintiff's experts agreed that the evidence suggested that John Rodgers had done the test multiple times and that he

had never had a problem before this accident.  It was not necessary to be within the arc of the propeller to complete the task.  He had already successfully tested the cylinders on the right hand side a few minutes earlier without being in the arc of the propeller.  It is undisputed that he voluntarily placed himself in harm's way.  The second prong of the assumption of the risk defense is undisputedly met.  The Defendants, including AWB are entitled to summary judgment based upon assumption of the risk.

### III.   AWB is also entitled to summary judgment on the Alabama Extended Manufacturers Liability Doctrine claim because the deceased, John Rodgers misused the product.

Product misuse is an affirmative defense to an action based upon Alabama's Extended Manufacturer's Liability doctrine.  The plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer.  General Motors Corp. v. Saint, 646 So. 2d 564, 568 (Ala. 1994) *quoting* Kelly v. M. Trigg Enterprises, Inc., 605 So. 2d 1185 (Ala. 1992).  AWB points out to the Court that the undisputed evidence established that John Rodgers was not using AWB's model 2E-M Differential Pressure Tester at the moment of the incident.

The testimony and evidence establishes that after the accident, the compressed air hose was found on the floor, not hooked to the airplane, not hooked to the McFarland extension tube, and not hooked to the AWB Differential Pressure Tester in any manner.  The AWB Differential Pressure Tester was laying on top of the

engine and was not hooked to the engine in any way.  Mr. Rodgers had not started using the AWB compression tester on the left side of the engine before the accident happened.  Owning a tool does not mean you were using the tool.   By that logic every tool in the hanger was being used at the time of the incident.

However, if we assume, that plaintiff asserts that John Rodgers was using AWB's Tester, since it was found lying on the engine after the incident, then at the time of the incident, John Rodgers was not using the Tester in a manner intended or foreseen by AWB.  This is undisputed and true for multiple reasons.

First, AWB did not intend or foresee that a FAA licensed and trained aircraft mechanic like John Rodgers would ever place his head or torso in the arc of the propeller.  Neither Mr. McFarlane nor Mr. Lynch were aware of any incidents like Mr. Rodgers before they received notice of this incident by lawsuit.  Plaintiff's expert, Mr. Goglia could not locate a report of a similar accident in databases for the FAA, OSHA or NTSB.

Secondly, AWB did not intend or foresee that John Rodgers would apply air directly to the engine cylinder.  The Tester provides gauges for the mechanic to read the air pressure coming in and the air pressure holding in the cylinder.  There is no way for the mechanic to measure the air pressure without the gauges. John Rogers was not using the Tester as intended and designed because he was not passing the air through AWB's Tester.  The Tester has a valve that stops air from flowing

through it until the mechanic needs air to be applied to the engine cylinder. When used as intended by AWB, the aircraft mechanic attaches the Tester to the engine with a sparkplug hole adapter or with an extension tube like John Rodgers had on the day of the incident. A compressed air hose is attached to the Tester. The built in valve, when in the off position, keeps the air from entering the engine cylinder until the mechanic is ready. It defeats the purpose of the Tester to not install the device in line with the air hose and clearly AWB did not intend or foresee that a mechanic would attempt to conduct the compression test without any way to measure the pressure. Further, it beyond credible argument to assert that AWB intended or foresaw that a mechanic would place his head or body in the arc of the propeller to conduct the test. John Rodgers was a sophisticated user of the product. Alabama law provides that the manufacturer/distributer has no duty to provide an employer or its employees "with a warning of a danger of which they already were, or had reason to be aware." Ex parte Chevron Chemical Co., 720 So. 2d 922, 926 (Ala. 1998). The Plaintiff's expert agreed that you cannot conduct the compression test without the Tester.

If it could be considered that John Rodgers was using the product at the time of his injury, then he was undisputedly not using the product as intended and not using the product in a foreseeable manner. AWB is entitled to summary judgment because of this product misuse.

**IV.   AWB is also entitled to summary judgment because there is no evidence that the Differential Pressure Tester was the proximate cause of the injuries.**

The proximate cause of the injuries is the plaintiff standing within the arc of the propeller while conducting some maintenance plan.   No one knows or has testified exactly what John Rodgers was planning to do next when the propeller turned and struck him.   The AWB Differential Pressure Tester did not cause the propeller to turn and strike John Rodgers.   The plaintiff's own expert testified that the AWB Tester was actually not in specific use when the accident happened, as it was just lying on the engine.   It is undisputed that there are multiple reasons one might want to turn the propeller or apply air to a cylinder besides doing a compression test.   The Plaintiff's expert conceded that you cannot conduct the compression test without the Tester, so it is possible John Rodgers was conducting some unrelated test or procedure when the propeller turned and struck him as he was within the arc of the propeller. John Rodgers did not tell Mr. Findley or Mr. Wallace and they testified that they were not watching what he was doing.   Neither Mr. Findley nor Mr. Wallace saw the air hose in John Rodgers hand before the accident. The plaintiff is guessing what Mr. Rodgers was doing next when the incident happened.

It is undisputed by any evidence that both before the incident and after the incident the AWB Differential Pressure Tester was working as designed.   There are

no allegations that any part, any valve, any gauge failed to work. For example, there is no allegation that the AWB Tester failed or allowed or caused air to go into the engine cylinder when the valve was in a closed condition or that John Rodgers had the Tester attached to the engine when it caused the propeller to turn unexpectedly. To establish liability under the AEMLD the plaintiff must show that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. Bell v. T.R. Miller Mill Co., 768 So. 2d 953, 957 (Ala. 2000). The plaintiff must prove that the product left the defendant's control in an unreasonably dangerous condition and not fit for its expected use, and that that which caused the product to be in such an unfit condition in fact caused the injury. Id., *citing* Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala.1981).

There is no evidence that John Rodgers had begun to use the AWB Differential Pressure Tester at the time of the incident. If he had started using the Tester it would have either been hooked to the air hose or the tester would have been hooked to the engine's cylinder. It is undisputed that the Tester was lying on the engine not hooked to anything after the incident had occurred. AWB's Tester was not the proximate cause of the propeller movement and did not the cause John

Rodgers to stand in the arc of the propeller.  Even when the evidence is viewed in the light most favorable to the plaintiff, the AWB Tester was not the proximate cause of the injury and because no reasonable mind could reach a different conclusion, summary judgment is also proper under these facts.  See Lemond Constr. Co. v. Wheeler, 669 So. 2d 855, 862 (Ala. 1995)(proximate cause typically a jury question, unless no reasonable inferences from the evidence support the plaintiff's claim).

V.   **AWB is also entitled to summary judgment because the plaintiff relies upon speculation and conjecture to support the basis for the liability it alleges.**

"It is well settled that `[e]vidence that affords nothing more than mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury.'" Allstate Ins. Co. v. Mitsubishi Elecs. Am., Inc., 709 So. 2d 1306, 1309 (Ala. Civ. App. 1998), *quoting* Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d 585, 588 (Ala.1987).   Similarly, the Alabama Supreme Court noted in Swanstrom v. Teledyne Cont'l Motors, Inc., 43 So. 3d 564, 580 (Ala. 2009) that under both the "general acceptance test" set out in *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923) and under the 'scientifically reliable' standard of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) [and its progeny] that even if a witness is qualified to give expert testimony on a particular subject, the testimony cannot be based on "mere speculation and conjecture." Swanstrom at p. 588.   Mere assertions of belief, without any supporting research,

11

testing, or experiments, cannot qualify as proper expert scientific testimony under either the 'general-acceptance' standard enunciated in *Frye* or the 'scientifically reliable' standard of *Daubert [v. Merrell Dow Pharmaceuticals, Inc.],* 509 U.S. 579 (1993)." *Id. at* 580.

The plaintiff and plaintiff's expert rely upon mere assertions of belief, without any supporting research, testing, or experiments.   There are two bystander witnesses to the incident.  But, neither one testified as to what caused the propeller to turn.  Neither one said what caused John Rodgers to place himself in the arc of the propeller.  The one thing we do know is that the AWB Differential Pressure Tester did not cause the propeller to turn because it was not being used.

Mr. Findley testified that he did not see what happened, he only felt a rush of air.  Mr. Wallace testified that he was not watching what John Rogers was doing and further that he did not see what John Rodgers did, only that he had a sense that he was doing something.  After the accident the air hose was found on the floor.  No one testified that they saw John Rodgers pick up the hose off the floor before the incident.

The air hose had a locking connector on the end of the hose.  The locking ring has to be held open to mate the air hose to the opposite connector.  It is Plaintiff's guess that John Rodgers used the compressed air hose to temporarily push enough air into the engine cylinder to cause the propeller to turn.  However, the plaintiff's

experts did not test or measure the air pressure settings at the compressor or at the end of the hose.  There is not any evidence for the expert's to rely upon to form or support their opinions and the plaintiff's experts did not test to determine: the air pressure available at the hose end; the minimum air pressure that needed to be applied to the cylinder to cause the propeller to turn; or the level of air pressure and the length of time it needed to be applied for the speed of the propeller to be fast enough to cause the injuries the plaintiff incurred.  There is also no testimony or evidence to show that it is even humanly possible to hold the locking connector open long enough to apply enough air to cause the propeller to turn with the force required to cause the injuries.

In addition, we do know that John Rodgers expressed his frustration and aggravation to Mr. Findley and Mr. Wallace about this plane's previous compression tests and that he had completed half the engine with the same results as before.  If he was going to test the left side cylinders, John Rodgers needed to rotate the propeller to top dead center for that cylinder.  The plaintiff's experts did not conduct any testing, research or experiment and they did not cite to any literature regarding the amount of force required to rotate the propeller to determine if a person could forcefully rotate the propeller by hand.  It is undisputed that the propeller could be rotated by hand, but no one tested or applied this possibility.

Even if we accept the guess that John Rodgers was using the compressed air hose at the time of the incident, it is also documented in the FAA mechanics literature that there are other reasons beside compression testing to apply air to the cylinder of an airplane.  For example, to listen for the sound of leaking air through an engine valve or around a piston ring.  See "Aviation Maintenance Technician Handbook-Powerplant, Vol. 2" *supra* at p. 10-41(describing how air leakage can be detected at exhaust valve, intake valve or piston ring).  Because John Rodgers did not tell Mr. Findley or Mr. Wallace what he was doing and they were not watching him, he could have just as easily been working on another test or cleaning protocol. Plaintiff and Plaintiff's experts are just guessing what he was doing.  Plaintiff's expert did not do any research, testing or experiments to determine which of any of these equally plausible theories was possible.

As the Alabama Supreme Court noted in Ex parte Diversey Corp., 742 So. 2d 1250 (Ala. 1999), proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.  Id. at 1254.

Plaintiff's mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury and the Defendant is entitled to summary judgment as a matter of law.

**VI.   AWB is entitled to summary judgment on the breach of warranty claims asserted in the Plaintiff's Complaint.**

AWB is entitled to summary judgment on the breach of warranty claim because the plaintiff was not using the AWB 2-EM Differential Pressure Tester at the time of the incident and because AWB has not breached its express warranties or any implied warranties arising under Alabama's version of the UCC at 7-2-314 or 7-2-315.

It is undisputed that John Rodgers had not begun using the Tester on the left side of the engine at the time of the incident.  It was found lying on top of the engine and not connected to the engine or to the hanger's compressed air hose after the incident.  There is not any evidence that it failed to perform as designed at any time prior to the incident or that it is not still fully functional and accurate after the incident.

Under Alabama Code section 7-2-314 a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Merchantable means the good at least:  "(a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and

labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any." Ala. Code § 7-2-314. There is no evidence that the 2E-M Differential Pressure Tester failed to meet any of the statutory requirements of merchantability. In fact, the 2E-M was sold with a life time warranty and a 5 year calibration warranty. Mr. Sherman Rodgers testified that he kept the tester after selling other tools of his son's business because it still works and he needed it for similar aircraft engines.

Under Alabama Code section 7-2-315, an implied warranty of fitness for a particular purpose arises where the seller at the time of contracting has reason to know of any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable good. Ala. Code §7-2-315. John Rodgers ordered the AWB 2E-M Differential Pressure Tester and another item he needed from the stock of AWB. There is no evidence that AWB was told by John Rodgers what he needed the Tester for or that John Rodgers asked AWB for advice or was advised by AWB as to which Tester to buy or to use. Setting aside for argument purposes only that John Rodgers was not using the Tester at the time of the incident, there is also no evidence that the AWB 2E-M Tester was not fit for the purpose of performing Differential Pressure testing on Lycoming aircraft engines. He used the Tester successfully on two previous occasions on the same airplane and on the morning of the incident used it on the right hand side of the

16

engine for both cylinders.  There is no evidence to support a claim that the Tester failed to perform or was not suitable for its intended purpose.

For the reasons set for the plaintiff has failed to present substantial evidence to support a claim for breach of warranty by AWB and summary judgment is appropriate.

**VII. The Defendant is entitled to summary judgment on those claims based upon an allegation of wantonness because there is no evidence to support a finding that AWB acted wantonly or that any such alleged conduct caused the injuries alleged and because the danger of standing within the arc of the propeller was open and obvious to John Rodgers a trained aircraft mechanic.**

The Alabama Supreme Court has defined "wantonness" " 'as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.' "Garrie v. Summit Treestands, LLC, 50 So. 3d 458, 469 (Ala. Civ. App. 2010).  The determination of a duty is a question of law for the Court.

It is undisputed that John Rodgers was not using AWB's Tester at the time of the accident.  He may have been preparing to use it in the future, but he had not started using it on the left side of the engine.  Plaintiff's complaint (Doc. 1) does not identify a conscious act or omission, done by AWB while conscious that by doing the act or making the omission injury will likely or probably result, but alleges a general failure to warn John Rodgers.

Alabama law provides that the manufacturer/distributer has no duty to provide an employer or its employees "with a warning of a danger of which they already were, or had reason to be aware." Ex parte Chevron Chemical Co., 720 So. 2d 922, 926 (Ala. 1998); Wilson v. Kidde Products Ltd., No. CV-10-BE-3254-S, 2012 WL 3542210, at *7 (N.D. Ala. Aug. 14, 2012).   John Rodgers was a sophisticated user of the product.  He was licensed by the FAA for over 10 years as an Airframe and Powerplant mechanic and as an IA certified inspector.  He had conducted over 3000 compression tests in his career.  There is no duty to warn [John Rodgers] of a danger of which he is already aware, to wit, the danger of having your head or torso in the arc of the propeller.  Cook v. Branick Mfg., Inc., 736 F.2d 1442, 1448 (11th Cir. 1984), *citing* Glenn v. U.S. Steel Corp., 423 So.2d 152, 154 (Ala.1982); Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 189 So.2d 474, 476 (1966); See Vines v. Beloit Corp., 631 So. 2d 1003, 1005-06 (1994)(Eleventh Circuit's reasoning in Cook, *supra* persuasive).

Mr. Lykins and Mr. McFarlane both testified that they were unaware of any similar accident prior to notice of plaintiff's lawsuit.  Every year thousands of cylinders are tested using the 2E-M Differential Tester and Mr. Sherman Rodgers said his son had completed more than 3000 in his ten years as a professional mechanic.  Even plaintiff's experts could not find a report of a similar accident and were not aware of one.

AWB is also not liable because the danger that arises from standing in the arc of a propeller is open and obvious as a matter of law whether judged from the viewpoint of Mr. Rodgers a sophisticated user or from a reasonable person. Alabama applies the open-and obvious defense in product liability actions. Abney v. Crossman Corp., 919 So. 2d 289 (Ala. 2005). A duty to warn is triggered only when the supplier has no reason to believe the user will realize the "dangerous condition" of the product. Id. at 294. Negligent failure to warn cases are examined from the viewpoint of the person for whose use the product is supplied. Id. John Rodgers was a licensed FAA certified Airframe and Powerplant mechanic and licensed to conduct and approve the flight readiness of airplanes. He had conducted thousands of compression tests and inspected hundreds of airplanes. To such a sophisticated user, the danger of crossing within or occupying the arc of the propeller is undisputedly open and obvious. Even if this court should consider having the Tester lying on the engine to be equal to using the product, AWB had no duty to warn John Rodgers to stay out of the arc of the propeller.

AWB did not act wantonly or negligently toward John Rodgers and there is no genuine issue of material fact. AWB is entitled to summary judgment as to Count III of the Complaint.

## CONCLUSION

Defendant AWB is entitled to summary judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendant AWB Industries, Inc. respectfully requests that this Honorable Court enter summary judgment on its behalf as to all of Plaintiffs' claims.

Respectfully Submitted,


/s/Paul J. DeMarco
Attorney for Defendant
AWB Industries, Inc.

OF COUNSEL:

PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
300 Shelby Building
P. O. Box 661228 (35266)
Birmingham, AL 35216
pdemarco@pljpc.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March 2016, I electronically filed the foregoing pleading with the Clerk of the Court using the electronic filing system of the court which will send notification of such filing to the following counsel of record in this case:

Drew Barnett
Belt & Bruner, P.C.
Lakeshore Park Plaza, Suite 113
2204 Lakeshore Drive
Birmingham, AL 35209

Matt Abbott
Attott Law Firm, LLC
2100 Morris Avenue
Birmingham, AL 35203

James Gray, III
Anthony Watkins, Jr.
Devon Rankin
Lloyd, Gray, Whitehead & Monroe, P.C.
2501 20th Place South, Suite 300
Birmingham, AL 35223

/s/Paul J. DeMarco_____
OF COUNSEL