FILED

2017 Jan-26  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **GLORIA RODGERS, as Personal** ) | |
| **Representative of the Estate of** ) | |
| **JOHN RODGERS, Deceased,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:  1:14-CV-605-VEH** |
| ) | |
| **AWB INDUSTRIES, INC., d/b/a** ) | |
| **AIRCRAFT TOOL SUPPLY** ) | |
| **COMPANY, a corporation,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

### INTRODUCTION

This diversity of citizenship action was brought in 2014 by the Plaintiff,

Gloria Rodgers as Personal Representative of the Estate of John Rodgers,

Deceased, against AWB Industries, Inc., d/b/a/ as Aircraft Tool Supply Company

(hereinafter "AWB" and/or "Defendant") and McFarlane Aviation Inc.

(hereinafter "McFarlane").[1] After summary judgment motions had been filed by

---

[1]  The lawsuit was initially filed on April 2, 2014, and was assigned to another judge. Plaintiff initially sued AWB and McFarlane. On July 18, 2014, she amended her complaint to add claims against Robert Baines. (Doc. 13). On September 18, 2014, she voluntarily dismissed Mr. Baines, pro tanto. The case was reassigned to me on October 7, 2014. (Doc. 22). I then entered an order of pro tanto dismissal of Mr. Baines. (Doc. 23).

AWB (doc. 45) and McFarlane (doc. 47), and after full briefing on those motions (docs. 46, 48-52), the Plaintiff and McFarlane entered into a pro tanto settlement agreement. On July 21, 2016, this court entered an Order of Pro Tanto Dismissal dismissing all of Plaintiff's claims against McFarlane. (Order, doc. 63). Accordingly, AWB is the sole remaining defendant in this action. However, the parties made reference to each other's summary judgment filings, and the court will also do so in this opinion.

The court held a hearing on AWB's motion on August 4, 2016. Subsequent to that hearing, the parties filed supplemental briefing. (Docs. 66-73).

This action arose from the tragic accidental death of John Rodgers, a self-employed certified/licensed aircraft mechanic, who died after being struck by the propeller of an airplane on which he was working. All of Plaintiff's claims against Defendant (and against McFarlane, while that entity was a party), are based on Alabama law. Those claims are:  Alabama Extended Manufacturer's Liability Doctrine (Count I); Breach of Warranty (Count II); and Negligence/Wantoness (Count III). The *prima facie* elements of each claim include harm proximately caused by the alleged breach.[2] "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes,

---

[2] *See* Analysis, *infra*.

produces the injury and without which the injury would not have occurred. An injury may proximately result from concurring causes; however, it is still necessary that the plaintiff prove that the defendant's negligence caused the injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citations omitted). As explained below, because Plaintiff has failed to point out evidence from which a reasonable jury could find that AWB did any act, or failed to do any act, which proximately caused the airplane propeller to strike John Rodgers, summary judgment is due to be entered in AWB's favor as to all of Plaintiff's claims against it.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis

3

for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[3] *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

---

[3] When *Celotex* was decided FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

4

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it

5

must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358

(1996). The second method a movant in this position may use to discharge its

burden is to provide affirmative *evidence* demonstrating that the non-moving party

will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this

occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a

directed verdict at trial on the material fact sought to be negated. *Id.*

**UNDISPUTED MATERIAL FACTS**[4]

This case arises from an accident that occurred on July 19, 2012, in an

airplane hangar at the Anniston Regional Airport. John Rodgers was a certified,

licensed aircraft mechanic who leased space from Anniston Aviation to conduct

his business called Cheaha Aircraft Works. His business was separate from that of

Anniston Aviation. That is, he was self-employed.

Anniston Aviation is a privately owned company separate from Anniston

Regional Airport. Anniston Regional Airport is owned by the city. Anniston

---

[4] Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

Aviation leases the buildings and land from Anniston Regional Airport to conduct business as Anniston Aviation, primarily selling fuel to airplanes and renting hangars for airplane storage and maintenance. Scott Wallace ("Wallace") is the manager at Anniston Aviation. Rodney Findley ("Findley") was an employee of Anniston Aviation beginning in 2006 and took care of fueling up planes, book work and accounting. Both Wallace and Findley were present at the time of the incident. However, neither one of them (nor anyone else) saw the incident occur.

John Rodgers owned a model 2E-M Differential Pressure Tester (hereinafter the "Tester") that was manufactured by AWB. The Tester allows a mechanic, such as John Rodgers, to test each cylinder on the engine of an airplane to make sure the cylinder's compression is within the manufacturer's limits or specifications. The Tester has a valve that stops air from flowing through it until the mechanic needs air to be applied to the engine cylinder.

When used as intended by AWB, the aircraft mechanic hooks the Tester to the engine with a sparkplug hole adapter or with an extension tube like John Rodgers had on the day of the incident. The mechanic attaches a compressed air line to the Tester by means of a standard fitting. The Tester's valve, when in the off position, keeps the air from entering the engine cylinder until the mechanic is ready. When the mechanic is ready, he turns the valve from off to on, and air

7

enters the engine cylinder. The mechanic can then check the cylinder's air pressure leakdown rate against its built-in calibrated standard to instantly determine if the engine's cylinder leakage is within the manufacturer's limits.

John Rodgers was testing the cylinders on an airplane on the day of his accident. Among the tools he owned and had available to test the cylinders were the Tester and an extension tube manufactured by McFarlane (hereinafter the "Extender").

It is undisputed that John Rodgers was a skilled and knowledgeable airplane mechanic. Among other things, John Rodgers earned a Federal Aviation Administration ("FAA") aircraft mechanic's certificate, which included both a Airframe and Powerplant rating ("A & P"). He also received an Inspection Authorization ("IA"). An IA allows a certified mechanic to conduct annual inspections on aircraft and return aircraft to service after annual inspections, major alterations and after major repairs by signing the official FAA logbook for the maintenance record of that aircraft.

The FAA publishes manuals for aircraft mechanics like John Rodgers. Its "Aviation Maintenance Technician Handbook – Powerplant, Vol. I", FAA-H-8083-32 (2012), describes the purpose of the Tester as follows:

> The differential pressure tester checks the compression of

8

aircraft engines by measuring the leakage through the cylinders. The design of this compression tester is such that minute valve leakages can be detected, making possible the replacement of cylinders where valve burning is starting. The operation of the compression tester is based on the principle that, for any given airflow through a fixed orifice, a constant pressure drop across the orifice results.  As the airflow and pressure changes, pressure varies accordingly in the same direction. If air is supplied under pressure to the cylinder with both intake and exhaust valves closed, the amount of air that leaks by the valves or piston rings indicates their condition; the perfect cylinder would have no leakage. The differential pressure tester requires the application of air pressure to the cylinder being tested with the piston at top-center compression stroke.

(AWB MSJ Narrative Statement of Undisputed Facts, Doc. 45-1, facts 1-37).

On July 19, 2012, John Rodgers was using the Tester to test the cylinders of an airplane engine. He was also using an Extender. No one was watching John Rodgers perform the test and no one saw the accident, but it is undisputed that John Rodgers was hit in the left side of his head and the left side of his chest by the airplane propeller while performing the test on one of the two left cylinders of the airplane (he had finished testing both right cylinders — ## 1 and 3 — without incident), and that he died — on July 21, 2012 — from that blow.

The manner in which John Rodgers performed the final test is not known. For example, it is not known whether or not John Rodgers rotated the propeller to the "top dead center" for the left cylinder (which he should have done). However,

it is undisputed that, <u>after</u> he completed testing the two <u>right</u> cylinders, he disconnected the air hose from the Tester and pushed the air hose under the airplane instead of pushing it over the engine. It is further undisputed that, at the time of the accident, he had already screwed the [Extender] into the sparkplug hole on the left front cylinder" — the # 2 cylinder. It is also undisputed that the airplane propeller suddenly rotated around and struck John Rodgers in the head and chest and that he subsequently died from those injuries.

After the accident, the compressed air hose was found on the floor of the hanger, not hooked to the airplane, or to the Extender, or to the Tester. In fact, the Tester was found lying on top of the engine and was not hooked to the engine in any way.

## ANALYSIS

As explained below, a necessary element of each of Plaintiff's claims against AWB is that the Tester proximately resulted in the injury to John Rodgers. However, there is simply no evidence that John Rodgers was — or was not — in fact using the Tester or intending to use the Tester at the time the accident happened. This lack of evidence ultimately is fatal to all of the Plaintiff's claims against Defendant.

### Alabama Extended Manufacturer's Liability Doctrine (Count I)

The Alabama Supreme Court has expressly modeled its Alabama Extended Manufacturer's Doctrine ("AEMLD") on § 402A of the Second Restatement of Torts and the landmark line of common-law cases beginning with Judge Cardozo's *MacPherson v. Buick Motor Co*., 217 N.Y. 382, 111 N.E. 1050 (1916), that allow consumer tort recovery without direct proof of negligence in the manufacturing process. *See Atkins v. American Motors Corp.*, 335 So. 2d 134, 137-38 (Ala. 1976); *see also* RESTATEMENT OF THE LAW, THIRD, Torts:  Products Liability, § 3, at 111. To prevail under the AEMLD, a plaintiff must present evidence that the defendant "put[] on the market a product which is not reasonably safe, and the plaintiff is injured <u>as a result</u> of a contemplated use of that product." *Atkins*, 335 So. 2d at 140 (emphasis supplied); *see also Taylor v. General Motors Corp.*, 707 So. 2d 198, 201 (Ala. 1997).

Plaintiff's claim under the AEMLD is that John Rodgers was injured by the Tester's defective design in that John Rodgers thought he was connecting the Tester — rather than the Extender (which was already connected to the airplane engine cylinder) — to the air compressor hose, and that, if the Tester had been designed differently, he would not have been able to make that mistake. However, no one knows what John Rodgers was thinking when he connected one end of the

Extender to the airplane cylinder and the other end to the air compressor hose. A jury would have to speculate that, despite his years of experience, he confused the Extender with the Tester. Further, it is undisputed that, if the <u>Extender</u> or the <u>air compressor hose</u> had been manufactured so that <u>they</u> were not compatible with each other, the accident could not have occurred. Therefore, Plaintiff has failed to present evidence that any aspect of the design of the Tester or the warnings accompanying it proximately caused the accident that injured John Rodgers.[5] Accordingly, summary judgment is due to be granted as to Plaintiff's claim in Count I.

## <u>Breach of Warranty (Count II)</u>

In Count II of his Complaint, Plaintiff asserts a claim for breach of an express and/or implied warranty of merchantability. In either event, Plaintiff is asserting a claim for breach of contract. *See Ex parte Miller*, 693 So. 2d 1372, (Ala. 1997) (express warranties are treated like any other type of contract and interpreted according to general contract principles). "To prevail on a breach of contract claim, a plaintiff is required to present evidence in support of the

---

[5] Plaintiff has provided expert opinions to support her AEMLD claim. However, those expert opinions cannot establish proximate causation here, because they are based on speculation. FED. R. CIV. P. 702 allows expert opinions only if they are "based on sufficient <u>facts</u> or data." *Id.* (emphasis supplied).

following elements of his claim:  ... (4) <u>damage sustained as a result</u> of the defendants' nonperformance." *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (emphasis supplied). "To establish [a] claim of breach of the implied warranty of merchantability, [a plaintiff] must 'prove the existence of the implied warranty, a breach of that warranty, and <u>damages proximately resulting</u> from that breach.' " *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 110 (Ala. 2003) (quoting *Tucker v. General Motors Corp.*, 769 So. 2d 895, 901 (Ala. Civ. App. 1998) (quoting *Barrington Corp. v. Patrick Lumber Co.*, 447 So. 2d 785, 787 (Ala. Civ. App. 1984) (quoting, in turn, *Storey v. Day Heating and Air Conditioning Co.*, 56 Ala. App. 81, 83, 319 So. 2d 279, 280 (1975)) (alterations and emphasis supplied).

Because, as explained in analyzing Plaintiff's AEMLD claim, Plaintiff has failed to present evidence that any aspect of the Tester proximately caused the accident that injured John Rodgers, summary judgment is due to be granted as to Plaintiff's claim in Count II.

### Negligence/Wantoness (Count III)

Plaintiff's third claim is made under theories of negligence and/or wantonness. As with an AEMLD claim, "[t]he element of proximate cause is essential to the plaintiff's prima facie case of negligent failure to adequately warn."

13

*Gurley v. Am. Honda Motor Co., Inc.*, 505 So. 2d 358, 361 (Ala. 1987). Thus,

"[u]nder both the AEMLD and the negligence theory, [the plaintiff] has the burden

of proving proximate causation." *Clarke Indus., Inc. v. Home Indem. Co.*, 591 So.

2d 458, 461 (Ala. 1991). To establish a claim of wantonness, "the plaintiff must

prove that the defendant, with reckless indifference to the consequences,

consciously and intentionally did some wrongful act or omitted some known duty.

To be actionable, that act or omission must proximately cause the injury of which

the plaintiff complains." *Norfolk S. Ry. Co. v. Johnson*, 75 So. 3d 624, 646 (Ala.

2011), *as modified on denial of reh'g* (July 8, 2011) (emphasis supplied) (internal

citation omitted). "Proximate cause is an essential element of both negligence

claims and wantonness claims." *Id.* (internal citation omitted).

Because, as explained in analyzing Plaintiff's AEMLD claim, Plaintiff has

failed to present evidence that any aspect of the Tester proximately caused the

accident that injured John Rodgers, summary judgment is due to be granted as to

Plaintiff's claim in Count III.

## CONCLUSION

While the accident was tragic, Plaintiff has the burden to bring forward, in

opposing summary judgment, substantial evidence to support her claims against

AWB. Proximate causation is a necessary element of each of those claims.

14

Plaintiff has failed to point to any admissible evidence that shows that any aspect of the Tester proximately caused the accident. Speculation cannot be allowed to substitute for evidence. Summary judgment will be granted to AWB by separate order.

**DONE** and **ORDERED** this the 26th day of January, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15