FILED
2019 Aug-12 AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GLORIA RODGERS, as Administrator of the Estate of John Rodgers,<br><br>    Plaintiff,<br><br>v.<br><br>AWB INDUSTRIES INC., d/b/a Aircraft Tool Supply Company, a corporation,<br><br>    Defendant. | 1:14-cv-00605-ACA |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendant AWB Industries, Inc.'s ("AWB") amended and renewed motion for summary judgment. (Doc. 88).

This case arises from the death of John Rodgers after being struck in the head by an aircraft propeller while preparing to perform a test on the cylinder of a plane. His widow, Ms. Rodgers, filed suit against the manufacturer of a tool Mr. Rodgers was using that day, alleging a violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), breach of warranty, and negligence or wantonness. (Doc. 13).

The court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment. The court **DENIES** the motion with respect to the AELMD and negligence claims because a jury must decide AWB's affirmative defenses of

contributory negligence, assumption of the risk, and product misuse. The court **DENIES** the motion with respect to Ms. Rodgers' claim that AWB breached the implied warranty of merchantability because a jury must decide whether the product was fit for its ordinary purpose. But to the extent Ms. Rodgers intended to raise a claim that AWB breached the implied warranty of fitness for a particular purpose, she has not presented any evidence to show the existence of that warranty, so the court **GRANTS** the motion for summary judgment on that claim. Finally, the court **GRANTS** the motion for summary judgment on Ms. Rodgers' claim of wanton failure to warn because she has not presented any evidence that AWB was on notice of a risk of injury from its product, but the court **DENIES** the motion as to her other wantonness claims because AWB's arguments in support of summary judgment do not establish as a matter of law that it did not wantonly design, manufacture, or market the Tester.

I. **BACKGROUND FACTS**

As the court will set out in more detail below, this case has already been before the Eleventh Circuit Court of Appeals once, and that Court described the facts relevant to that appeal in the light most favorable to Ms. Rodgers. (*See* Doc. 89). Under the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th

Cir. 1990). The court notes that the law of the case doctrine does not apply where "substantially different evidence is produced" because "[w]hen the record changes . . . the evidence and the inferences that may be drawn from it change." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005).

The record in this case has not changed; AWB's amended and renewed motion for summary judgment depends on exactly the same evidence as its initial motion for summary judgment. Thus, at this stage the court will follow the Eleventh Circuit's description of the facts, except where necessary to fill in any gaps that the Court may not have addressed because those facts were not relevant to the issues before the Court. The court further notes that the Eleventh Circuit's description of the facts will cease to be binding if and when the record changes—such as at trial. *See id.* at 1283–84 (collecting cases).

Mr. Rodgers "was an experienced pilot and aircraft mechanic." (Doc. 89 at 6). On July 19, 2012, he was working as a self-employed airplane mechanic at Anniston Regional Airport. (*Id.*). That day, he was performing a "differential pressure test" on the cylinders of an airplane using a product manufactured by AWB called the Model 2E-M Differential Pressure Tester (the "Tester"). (*Id.* at 3). The Tester is the product at issue in this case.

A differential pressure test requires a mechanic to introduce compressed air into an airplane's cylinder—which is located behind the plane's propeller—to

measure the cylinder's "air leakage rate." (Doc. 89 at 3, 5). Mr. Rodgers was using several tools to perform the differential pressure test: a compressed air hose, a compression tester extension (the "Extender"), and the Tester. (*See id.* at 6–8). The compressed air hose releases unregulated compressed air. (*Id.* at 3). The Tester performs two functions: it regulates and measures the amount of compressed air passing through it into the airplane cylinder. (*Id.* at 3–4). The Extender's sole function is to connect the Tester to the airplane's cylinder. (*Id.* at 4).

According to the Tester's instructions, to perform the differential pressure test, a mechanic should take the following steps in order: (1) remove one spark plug from one cylinder; (2) rotate the plane's propeller until the piston of the cylinder begins its compression stroke, so that the propeller will not move even after air is introduced to the cylinder; (3) connect the Extender to the spark plug hole; (4) connect the Tester to the Extender, making sure that the Tester is not yet allowing air through to the cylinder yet; (5) connect the compressed air hose to the Tester; (6) adjust the Tester to allow about ten to twenty pounds per square inch ("psi") of compressed air through to the cylinder; (7) rotate the propeller until the piston is in the "top dead center" location; (8) adjust the Tester to allow eighty psi of compressed air through; and (9) compare the amount of compressed air flowing into the cylinder to the amount the cylinder maintains, revealing the air leakage rate. (Doc. 89 at 3, 5–6 & n.2). At the eighth step—increasing the amount of compressed air flowing

4

through the Tester to the cylinder—the Tester's instructions state: "***NOTE: At this stage, enough pressure will build up in the cylinder to force the piston down from the [top dead center] position; therefore it is recommended that someone hold the [propeller] to prevent rotation.***" (*Id.* at 6).

In order to connect the compressed air hose to the Tester, and the Tester to the Extender, each tool has couplings, which is "the part of one tool that connects to another tool." (Doc. 89 at 3–4 & n.1). The compressed air hose has a "standard ¼-inch female coupling," which connects to the Tester's "standard ¼-inch male compressed air coupling." (*Id.* at 3). The Tester also has an "output hose" that connects to the Extender. (*Id.* at 3–4). The Tester's output hose has a ¼-inch female coupling, and the Extender has a ¼-inch male coupling. (*Id.* at 4).

In summary, the mechanic should plug the Extender into the airplane cylinder, then connect the Tester to the Extender, then the compressed air hose to the Tester, in that order. The compressed air hose should not be connected directly to the Extender because that would introduce unregulated compressed air directly to the cylinder, which could cause the propeller to rotate. But because all of the couplings that connect these tools are the same size, it is possible to connect the compressed air hose's ¼-inch female coupling to the Extender's ¼-inch male coupling, bypassing the Tester completely and allowing unregulated compressed air into the cylinder.

Taking the facts in the light most favorable to Ms. Rodgers, it appears that is what happened on July 19, 2012, when Mr. Rodgers was conducting a differential pressure test on an airplane. Two witnesses—Scott Wallace and Rodney Findley—helped Mr. Rodgers push the airplane into a hangar, at which point Mr. Rodgers "voiced frustration and told Wallace and Findley that he needed to perform a compression test on the engine for the third time." (Doc. 89 at 6). Using the Tester, Mr. Rodgers performed compression tests on the two cylinders on the right side of the engine (from the perspective of a pilot in the cockpit). (*Id.* at 7 & n.4).

Mr. Rodgers then pushed the compressed air hose under the airplane and walked around to the left side and began to "hook up and get everything ready for the compression check[.]" (Doc. 89 at 7) (alteration in original). Neither Mr. Wallace nor Mr. Findley saw what happened next, but "[a]ll of a sudden, the propeller rotated quickly and forcefully," striking Mr. Rodgers on the left side of his head and chest. (*Id.* at 7–8). Mr. Rodgers fell to the ground, unresponsive, and was taken to the hospital with an open skull fracture, where he died several days later. (*Id.* at 8).

Afterward, the Extender was discovered connected to the left-front cylinder. (Doc. 89 at 8). The Tester, not connected to anything, was sitting on top of the left side of the engine. (*Id.*). The compressed air hose was lying on the floor next to the left side of the engine. (*Id.*). From this evidence, a jury could reasonably infer that

Mr. Rodgers, "having stated he was performing a compression test and set up to perform such a test, accidentally inserted air into the cylinder in an attempt to perform the compression test." (*Id.* at 16). In other words, a jury could reasonably infer that Mr. Rodgers accidentally connected the compressed air hose directly to the Extender—and through it the cylinder—instead of first connecting the Tester to the Extender and then connecting the compressed air hose to the Tester.

In addition to the evidence surrounding the accident itself, Ms. Rodgers presented evidence about the design of the Tester and a potential alternative design that she says could have prevented this accident. Specifically, she proposed a design in which the part of the Tester that connects to the Extender would be ¾ of an inch instead of ¼ of an inch. (Doc. 89 at 10). This change would in turn require the Extender's ¼-inch coupling to be increased to ¾ of an inch. (*Id.*). If the Extender had a ¾-inch coupling, a person could not accidentally connect the compressed air hose's ¼-inch female output coupling to the Extender, because the couplings would not fit together. (*Id.*).

Ms. Rodgers presented reports from two experts, one of whom opined that "this alternative design change is not only safer than the subject design, but is also practical" (doc. 89 at 10), and one of whom opined that larger fittings on the areas where the Tester connects to the Extender "have long been commercially available and if installed . . . would completely prevent this compatibility" (doc. 49-7 at 12–

7

13).  AWB put forth its own expert report, in which the expert concluded that Ms. Rodgers' proposed alternative design (1) limited the intended use of the Tester by making it incompatible with existing cylinder adapters and extensions; (2) failed to eliminate the possibility of a mechanic inadvertently introducing unregulated high pressure air into the engine; (3) would encourage users to modify the Tester, negatively affecting the calibration of the Tester; and (4) would compromise aviation safety by increasing the potential of an aircraft engine being returned to service in an unsafe condition.  (Doc. 89 at 10; *see also* Doc. 48-11 at 24).

## II.  PROCEDURAL HISTORY

Ms. Rodgers filed this lawsuit in April 2014.  (Doc. 1).  In January 2017, the court (Hopkins, J.) entered summary judgment in favor of AWB and against Ms. Rodgers, concluding that she had presented nothing but speculation that "any aspect of the design of the Tester proximately caused the accident" that killed Mr. Rodgers.  (Doc. 75 at 15; Doc. 76).  The court did not address the five other arguments that AWB proffered in support of its motion for summary judgment.  (*See generally* Doc. 46; Doc. 75).

Ms. Rodgers appealed and the Eleventh Circuit Court of Appeals reversed the court's judgment.  (Doc. 89).  The Court held that Ms. Rodgers' "claim is not too speculative as a matter of Alabama law" (*id.* at 15), and "[a] jury could reasonably conclude that Rodgers, having stated he was performing a compression test and set

8

up to perform such a test, accidentally inserted air into the cylinder in an attempt to perform the compression test" (*id.* at 16).

The Eleventh Circuit also rejected AWB's alternative argument that "the defective design of the Tester could not be the proximate cause of Rodgers's injury because the Tester was not being used when the accident occurred," explaining that "[t]he Supreme Court of Alabama . . . has never held that 'use' of a product is a requirement of the AEMLD, breach of warranty, or negligence or wantonness claims." (Doc. 89 at 18). The Court "decline[d] to decide Defendant's alternative arguments, including arguments based on its affirmative defenses, that the district court did not reach," and it did not "opine as to the other elements of Plaintiff's claims." (*Id.* at 21–22).

On remand, AWB filed its amended and renewed motion for summary judgment. (Doc. 88). The judge who had been presiding over the case (Hopkins, J.) then reassigned the case to the undersigned. (Doc. 90). This court struck two of the arguments that AWB made in the amended and renewed motion, finding that it could not raise new arguments that it had not asserted in its initial motion for summary judgment, but took the other five arguments under submission. (Doc. 109).

## III. DISCUSSION

AWB contends that summary judgment is warranted on all of Ms. Rodgers' claims. (Doc. 88). First, it asserts that Mr. Rodgers' contributory negligence and

9

assumption of the risk bar the AEMLD and negligence claims, and that Mr. Rodgers' misuse of the Tester bars the AEMLD claim. (Doc. 88 at 37–43). Next, AWB argues that summary judgment is warranted on Ms. Rodgers' breach of warranty claims because Mr. Rodgers was not using the Tester at the time of his injury, AWB never gave Mr. Rodgers any advice about which tool to buy or use, and there is no evidence the Tester was not fit to perform differential pressure testing. (*Id.* at 44–46). Finally, AWB asserts that summary judgment is warranted in part on the wantonness claim because it had no duty to warn Mr. Rodgers about the danger of standing in the arc of an airplane propeller, Ms. Rodgers had not presented evidence that AWB was aware of any similar accidents, and the danger is open and obvious as a matter of law. (*Id.* at 51–53).[1]

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1318 (11th Cir. 2012). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted). Because

---

[1] At the motion hearing held on July 2, 2019, AWB argued for the first time that the statute of limitations barred Ms. Rodgers' claims for breach of warranty. Because AWB did not raise that argument in its motion for summary judgment, the court does not consider it.

this case is before the court on diversity jurisdiction, the court must "apply the substantive law of the state in which the case arose," *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010), which is Alabama.

1. Contributory Negligence and Assumption of the Risk

AWB contends that, as a matter of law, contributory negligence and assumption of the risk bar Ms. Rodgers' AELMD and negligence claims because Mr. Rodgers placed himself within the arc of the airplane's propeller. (Doc. 88 at 37–42).

Under Alabama law, contributory negligence and assumption of the risk are affirmative defenses to AELMD and negligence claims. *Dennis v. Am. Honda Motor Co.*, 585 So. 2d 1336, 1339 (Ala. 1991). To establish contributory negligence, a defendant must show that the plaintiff "had knowledge of the dangerous condition; that he appreciated the danger under the surrounding circumstances; and that, failing to exercise reasonable care, he placed himself in the way of danger." *Chilton v. City of Huntsville*, 584 So. 2d 822, 824 (Ala. 1991). "The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger." *Ex parte Potmesil*, 785 So. 2d 340, 343 (Ala. 2000).

Both of these defenses require the court to determine the dangerous condition at issue in this case. AWB contends that the dangerous condition was Mr. Rodgers' position near the propeller; Ms. Rodgers retorts that the dangerous condition was the likelihood that a person could confuse the compressed air hose with the Tester's output hose, accidentally connecting the compressed air hose directly to the Extender and causing the propeller to rotate unexpectedly. (*See* Doc. 38–39, 40–42; Doc. 98 at 11–12, 17). Under Ms. Rodgers' theory of the case, Mr. Rodgers was standing within the arc of the propeller because he was still setting up for the differential pressure test and did not expect the propeller to rotate.

Review of Ms. Rodgers' complaint clearly shows that she has consistently alleged that the compatibility of the couplings between the compressed air hose, the Tester's input and output hoses, and the Extender is the dangerous condition. (*See* Doc. 13 at 3–7, 9). In addition, she has presented evidence from which a reasonable jury could conclude that the compatibility of those couplings caused Mr. Rodgers' injuries. (*See* Doc. 89 at 21). There is sufficient evidence from which a reasonable jury could find that he was not contributorily negligent because he did not have knowledge of the dangerous condition, he did not appreciate the danger under the circumstances, and he did not fail to exercise reasonable care. *See Chilton*, 584 So. 2d at 824. There is also sufficient evidence from which a reasonable jury could find that he did not assume the risk because he did not have knowledge and

appreciation of the danger he faced, and he did not voluntarily consent to bear that risk. *See Ex parte Potmesil*, 785 So. 2d at 343.

Accordingly, AWB's argument that Mr. Rodgers placed himself within the arc of the propeller is beside the point. The court will not grant summary judgment in favor of AWB on the basis of the affirmative defenses of contributory negligence or assumption of the risk.

2. Product Misuse

AWB contends that summary judgment is warranted on the AEMLD claim because Mr. Rodgers misused the Tester by failing to follow its instructions. (Doc. 88 at 42). Specifically, AWB asserts that, had Mr. Rodgers followed the instructions, he would have (1) connected the Tester to the Extender before ever picking up the compressed air hose; (2) rotated the propeller to the bottom dead center position before starting the compression stroke; and (3) controlled the propeller from rotating. (*Id.* at 43).

"[M]isuse [of the product] is a defense under the AEMLD." *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185, 1192 (Ala. 1992). But "the plaintiff's misuse of the product must not have been reasonably foreseeable by the seller or manufacturer." *Id.* (quotation marks omitted); *see also Oden v. Pepsi Cola Bottling Co. of Decatur*, 621 So. 2d 953, 959 (Ala. 1993) ("[P]roduct 'misuse' is a use of the product that is not reasonably foreseeable to the defendant.").

AWB's argument about Mr. Rodgers' failure to follow the instructions for the Tester assumes that he *intentionally* connected the compressed air hose to the Extender. This court cannot make that assumption at the summary judgment stage. Indeed, as the Eleventh Circuit held, "[a] jury could reasonably conclude that Rodgers, having stated he was performing a compression test and set up to perform such a test, accidentally inserted air into the cylinder in an attempt to perform the compression test." (Doc. 89 at 16). The Eleventh Circuit also held that a reasonable jury could find that, based on the Tester's design, Mr. Rodgers' injury was foreseeable. (*Id.* at 20–21). Although the Eleventh Circuit made that holding in the context of determining whether there was sufficient evidence of proximate causation to survive summary judgment, this court finds the rationale persuasive on the question of product misuse. If the design of the Tester made Mr. Rodgers' injury reasonably foreseeable, its design could make Mr. Rodgers' purported misuse of the product reasonably foreseeable. Summary judgment is not warranted on this ground.

### 3. Breach of Warranty

The breaches of warranty at issue in this case are (1) the implied warranty of merchantability, under Alabama Code § 7-2-314; and (2) the implied warranty of fitness for a particular purpose, under Alabama Code § 7-2-315. (*See* Doc. 98 at 20–21). The court will address each in turn.

The implied warranty of merchantability provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ala. Code § 7-2-314(1). Among other requirements, goods are merchantable if they "[a]re fit for the ordinary purposes for which such goods are used." *Id.* § 7-2-314(2)(c).

AWB's only argument with respect to the implied warranty of merchantability is that the Tester was merchantable because it was sold with a lifetime warranty and a five-year calibration warranty, and Mr. Rodgers' father testified that he still uses the Tester. (Doc. 88 at 45). Ms. Rodgers responds that she has presented evidence from which a jury could find that the Tester's design is defective, such that it is not fit for its ordinary purpose. (Doc. 98 at 20–21). The court agrees with Ms. Rodgers that there is a genuine dispute of material fact about whether the Tester is fit for the ordinary purposes for which it is used, and therefore whether the Tester was merchantable.

As for the implied warranty of fitness for a particular purpose, under Alabama law:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

15

Ala. Code § 7-2-315. AWB asserts that there is no evidence that Mr. Rodgers asked AWB for advice about which product to buy or use. (Doc. 88 at 45). Ms. Rodgers does not respond to this argument, and the record does not contain any evidence that AWB had any reason to know of a "particular purpose" for which Mr. Rodgers required the goods or that Mr. Rodgers relied on AWB's skill or judgment to select the Tester. Accordingly, Ms. Rodgers has not presented evidence from which a reasonable jury could find the existence of the implied warranty. *See Storey v. Day Heating & Air Conditioning Co.*, 319 So. 2d 279, 280 (Ala. Civ. App. 1975) ("In an action for breach of an implied warranty, the plaintiff must prove the existence of the implied warranty . . . .").

The court will not grant summary judgment to AWB on the claim that it breached the implied warranty of merchantability, but the court **GRANTS** the motion for summary judgment on the claim that AWB breached the implied warranty of fitness for a particular purpose.

    4.    <u>Wantonness</u>

Ms. Rodgers asserts that AWB is liable for wanton design, manufacture, marketing, and failure to warn. (Doc. 13 at 9 ¶¶ 51, 53–57). AWB contends that it is entitled to summary judgment on the wanton failure to warn claim because (1) Mr. Rodgers was not using the Tester at the time of the accident; (2) AWB was not aware of any similar accident before notice of this lawsuit; and (3) the danger of

standing in the arc of a propeller is open and obvious as a matter of law, negating any duty to warn Mr. Rodgers of that danger. (Doc. 88 at 51–53).

Under Alabama law, wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3); *see also Bozeman v. Cent. Bank of the S.*, 646 So. 2d 601, 603 (Ala. 1994). The Alabama Supreme Court has explained that it is the conscious doing of some act or omission with reckless indifference to the knowledge that such act or omission will likely or probably result in injury. *Bozeman*, 646 So. 2d at 603 (quotation marks omitted). A failure to warn of a dangerous condition can support a claim of wantonness. *See Cook v. Branick Mfg., Inc.*, 736 F.2d 1442, 1448 (11th Cir. 1984).

The court notes at the outset that AWB's arguments relate only to its failure to warn users of the alleged risk of connecting the compressed air hose directly to the Tester; AWB made no arguments about Ms. Rodgers' claims of wanton failure to design, manufacture, and market the Tester. Accordingly, the court **WILL DENY** the motion for summary judgment as to those claims.

However, the court is persuaded by AWB's argument that it cannot be liable for a wanton failure to warn because it was not aware of any other similar accidents until Ms. Rodgers filed this lawsuit. Alabama law requires "*knowledge* that such act or omission will likely or probably result in injury." *Bozeman*, 646 So. 2d at 603 (emphasis added). Ms. Rodgers has presented no evidence that AWB *knew* that the

failure to warn users of the Tester would likely or probably result in injury. Although Dr. Maddox testified that an examination of potential human errors in the use of the Tester would have identified this problem (doc. 49-7 at 10), a reasonable jury could not infer from his testimony that AWB specifically had knowledge of the risk. Similarly, although AWB's expert testified that he had "heard discussions" in the industry about the possibility of someone accidentally "putting shop air directly into the engine when they meant to connect the tester" (doc. 48-10 at 27), a jury could not infer from that testimony that AWB had heard about that possibility.

The court **GRANTS** AWB's motion for summary judgment on Ms. Rodgers' claim of a wanton failure to warn. The court **DENIES** the motion as to her other wantonness claims.

## IV. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment. The court **GRANTS** the motion for summary judgment and **ENTERS SUMMARY JUDGMENT** in favor of AWB and against Ms. Rodgers as to any claim that AWB breached the implied warranty of fitness for a particular purpose and as to her claim of wanton failure to warn. The court **DENIES** the motion for summary judgment as to all of Ms. Rodgers' other claims.

**DONE** and **ORDERED** this August 12, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE